## City of Johnstown Annexation

*Barnhart & Nelson*, for appellants.

*Norman A. Krumenacker, Marlin B. Stephens* and *Robert E. Shahade*, for appellees.

PER CURIAM, August 12, 1957.—On July 12, 1957, appellees obtained a rule, returnable July 25, 1957, to show cause why certain taxable inhabitants of Upper Yoder Township who did not sign the petition to annex the Township to the City of Johnstown should not be permitted to join in such petition nunc pro tunc so that they should be considered as having signed on or before March 5, 1957, the date the petition for annexation was presented to the city council.

The Third Class City Law of June 23, 1931, P. L. 932, sec. 501, as amended by the Act of June 28, 1951, P. L. 662, 53 PS §35501, provides that a township may become annexed to a city "whenever three-fifths of the taxable inhabitants of such township . . . shall present a petition to the council of said city . . . asking

for such annexation." These who have here appealed from the legality of the annexation ordinance contend that less than three-fifths of the taxable inhabitants of the township "present (ed)" the petition asking for annexation. This matter remains to be determined after argument and the submission of written briefs. Appellees, by their petition nunc pro tunc, seek to add the names of 97 taxable inhabitants as of a time prior to the presentation of the annexation petition to the city council, which joined in the prayer of the petition. Of the ∘97 names appearing on the petition to join nunc pro tunc, the record shows that 57 were not on the assessment rolls and 40 were duly assessed.

The only case squarely in point which has been cited to us by either counsel is Lancaster City Annexation Case (No. 2). 374 Pa. 537. In this case, all of the land included within the portion to be annexed was owned by two property owners and the petition to the city council was signed by property owners only. On the township's appeal it was discovered that William E. Miller and his wife resided in the area to be annexed *although they were not assessed* and that they were the only inhabitants. It appeared that Miller was a general maintenance foreman of one of the property owners and his duties required him to reside on the premises. The Millers then petitioned to join the annexation petition nunc pro tunc and the lower court permitted the joinder. The Supreme Court refused to pass on the question of whether the Millers were actually taxable inhabitants but assumed that they were and approved the action of the lower court in permitting them to join nunc pro tunc. The court said, page 540: "Considering the equities of the case, we find no error on the part of the court below in allowing the nunc pro tunc proceedings."

So far as the 57 signers on the present petition who were not on the assessment rolls are concerned we feel

that we are bound by the authority of Lancaster City Annexation Case (No. 2)) to permit their joinder nunc pro tunc and will enter an appropriate decree. The 40 signers whose names appeared on the assessment rolls do not fall in the same category. An examination of the assessment rolls at the time the petitions for annexation were being circulated would have readily revealed their names and their signatures could have been requested at that time. They are not able to assert as were the Millers in the Lancaster Case ". . . that they were without knowledge as to whether they were or were not taxable inhabitants . . ." and the rule in that case is not authority for permitting their joinder.

Appellants call our attention to the rule that where an act of assembly fixes the time within which an act must be done, as for example, an appeal taken, courts have no power to extend it: Wise v. Cambridge Springs Borough, 262 Pa. 139; Higgins v. The Educators, 147 Pa. Superior Ct. 400. They also cite Quakertown Borough Annexation (No. 1), 4 Bucks 77, in support of their contention that if there were less than three-fifths of the taxable inhabitants on the original annexation petition, the city council had no jurisdiction to enact the disputed ordinance. Both of these contentions were equally applicable to the Lancaster case and nevertheless the Supreme Court there permitted a joinder nunc pro tunc of unassessed taxable inhabitants. Of course, if the court can permit the act to be done now as if it had been done earlier, then the jurisdictional requirement has been met.

We fully realize that mere hardship, ignorance and lack of due diligence are insufficient grounds to move the court to enter a decree nunc pro tunc. There must be either fraud or some breakdown in the judicial or administrative machinery which would amount to fraud or deception so far as the injured parties are concerned.

In Nixon v. Nixon, 329 Pa. 256, 260, the court held that appeals are barred after the statutory period unless there is ". . . fraud or some breakdown in the court's operation through a default of its officers, whereby the party has been injured. . . . Fraud, on the other hand . . . or its equivalent, 'the wrongful or negligent act of a court official'. . . may be a proper reason for holding that, as to the injured person, the statutory period does not run and that the wrong may be corrected by means of a petition filed nunc pro tunc within a reasonable time."

In Anthony v. Sanitary Water Board, 178 Pa. Superior Ct. 78, 81, the court said: "There may be extenuating circumstances which permit appeals nunc pro tunc as where an administrative officer fails to give required notice. . . ."

And in Peter Adoption Case, 176 Pa. Superior Ct. 6, 8, 9, we find the following: "It is the general rule that where an act of assembly prescribes the time within which an appeal must be taken, courts may not extend it or allow an appeal at a later day as a matter of indulgence . . . yet the allowance of an appeal, nunc pro tunc, is a power which a court on proper occasion may exercise."

No fraud has been alleged and therefore the question before us is whether there was such a breakdown in the assessment machinery of Upper Yoder Township as to mislead the proponents of annexation to the same extent as though a fraud had been practiced, and this through no fault of their own. The assessed taxable inhabitants for the year 1956 numbered 2,377. Appellants' tentative calculation shows that there were actually 3,148, or 771 taxable inhabitants who were not assessed. This figure is 32½ percent of the number of those assessed. Appellees' tentative calculation shows 3,112, 725 and 30½ percent respectively. We are compelled to regard this amazingly large dis-

crepancy as a breakdown in the assessment machinery which was in no way attributable to appellees. It would seem that appellants, while seeking to avoid the legal effect of such a finding, do not dispute it as a fact. In their answer they assert that: "The assessor flagrantly violated and disregarded the Precept given to her each year during her term of office."

We, therefore, enter the following

### Decree

And now, August 12, 1957, after argument and upon due consideration, the rule granted on July 12, 1957, to show cause why certain taxable inhabitants of Upper Yoder Township should not be permitted to join in the petition for annexation of the Township to the City of Johnstown nunc pro tunc on or before March 5, 1957, is hereby made absolute as to the 57 of such signers whose names were not on the assessment rolls for the year 1956; said rule is discharged as to the 40 such signers whose names were on the assessment rolls for said year.